IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| RYAN PATRICK SULLIVAN,<br><br>Plaintiff,<br><br>vs.<br><br>BRADLEY WOLD,<br><br>Defendant. | CV 20-00080-BLG-SPW-TJC<br><br><br>ORDER |

Pending before the Court are motions for summary judgment by Defendant Officer Wold (Doc. 122) and by Plaintiff Ryan Patrick Sullivan (Doc. 120), and Sullivan's motion for reconsideration (Doc. 121). The Court will grant Wold's motion and deny Sullivan's.

### I.  Motion for Reconsideration

Sullivan has objected to and moved for reconsideration of this Court's May 8, 2023 Order in which it struck his Amended Complaint. (Doc. 118.) Sullivan had not responded to the motion, but Defendants represented that he objected. Sullivan's motion asks the Court to reconsider its analysis in light of his untimely response, which was filed after the Court had ruled. Sullivan proposes that his response was untimely due to his movement to another facility. He seeks to amend his Complaint to add retaliation claims against dismissed defendants that have

1

arisen since the filing of this suit. (Docs. 119 and 121.)

D. Mont. L. R. 7.3 governs motions for reconsideration. "No one may file a motion for reconsideration of an interlocutory order without prior leave of court." L.R. 7.3(a). The Court will overlook Sullivan's failure to seek leave. However, in addition, the motion

> "must specify why it meets at least one of the following:
>
> (1)   (A) the facts or applicable law are materially different from the facts or applicable law that the parties presented to the court before entry of the order for which reconsideration is sought, *and*
>    (B) despite the exercise of reasonable diligence, the party applying for reconsideration did not know such fact or law before entry of the order; *or*
>
> (2) new material facts arose or a change of law occurred after entry of the order."

L.R. 7.3(b). Sullivan's motion fails to meet these standards. Sullivan's main point is that he has continued to suffer retaliation and therefore, this is new evidence that justifies amendment. However, as explained in the Court's prior Order, this litigation is far beyond any point where amendment is to be liberally allowed. (Doc. 118.) This case is on the eve of trial. If Sullivan has claims against defendants who are not currently parties to this litigation, he can raise them in an independent lawsuit. A plaintiff may join multiple defendants in one action where "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of

transactions and occurrences" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). However, as here, unrelated claims against different defendants must be pursued in separate lawsuits. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). This rule is intended "not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees -- for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)." *George*, 507 F.3d at 607. Sullivan's retaliation claim against Wold will be resolved in this litigation, but claims against other defendants that post-date the filing of this suit must be pursued elsewhere. The motion to reconsider is denied.

## II.   Motions for Summary Judgment

Both parties have moved for summary judgment. (Docs. 120 and 122.)

### A.   Standard for Summary Judgment

Federal Rule of Civil Procedure 56(a) entitles a party to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, which it believes demonstrate

the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A material fact is one that might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden, the non-moving party must go beyond the pleadings and designate by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Id.* at 324. In deciding a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party and draws all justifiable inferences in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007). "[W]hen simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001).

Defendant Wold has moved for summary judgment on each of Sullivan's claims against him, including excessive use of force, failure to protect, and retaliation. (Doc. 123 at 7 – 8.) Wold's brief is supported by a Statement of Undisputed Facts ("SUF") and sworn affidavits of several individuals. (Docs. 124,

125, 126, 127, 128, 129, and 130.) Sullivan has responded and filed a Statement of Disputed Facts. (Docs. 133 and 134.)

Sullivan moves for partial summary judgment on his failure to protect and retaliation claims. (Doc. 120 at 1.) He did not file a Statement of Undisputed Facts as required by D. Mont. L.R. 56.1, nor did he file any evidence or affidavits in support of his motion.

**B. Analysis**

Because both parties have moved for summary judgment on the failure to protect and retaliation claims, the Court must determine if the filings by both parties place facts in dispute. As to the excessive force claim, only Wold claims there are no disputed facts.

1. Excessive Force

The Court must first consider Wold's contention that Sullivan never exhausted his administrative remedies regarding his excessive force claim against Wold. (Doc. 123 at 14 - 15.) The Prison Litigation Reform Act ("PLRA")'s exhaustion requirement states:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

5

42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 524-25 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 93 - 97 (2006). Exhaustion is mandatory. *Booth*, 532 U.S. at 741; *Jones v. Bock*, 549 U.S. 199, 211 (2007). "Exhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim." *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014).

The defendant bears the burden of proving failure to exhaust. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If the defendant initially shows that (1) an available administrative remedy existed and (2) the prisoner failed to exhaust that remedy, then the burden of production shifts to the plaintiff to bring forth evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). The prisoner must produce evidence demonstrating that "the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (internal citations and quotation marks omitted).

The sworn affidavit of the commander of Yellowstone County Detention Facility, Robert Lester, states that the facility has a grievance process for inmates, and that the facility had no record that Sullivan had filed a grievance against Wold that alleged excessive force or sexual contact. (Doc. 130 at 2.) Defendants meet their burden to establish the existence of a procedure and Sullivan's failure to use it. The onus then shifts to Sullivan to establish that he was unable to exhaust for some valid reason.

Sullivan responds that he "put in many grievances," and that the grievance procedure is "unavailable, ineffective, unobtainable, unduly prolonged, inadequate and obviously futile." (Doc. 142 at 1.) Sullivan states that various grievances of his were introduced in his state criminal proceeding. (Doc. 142 at 2.) However, grievances, generally, are not what are required. Sullivan must have grieved Wold's conduct specifically. "Exhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is hauled into federal court, and it discourages 'disregard of [the agency's] procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotations omitted). By failing to file a grievance regarding Wold's alleged misconduct, Sullivan deprived Yellowstone County from conducting its own investigation and responding as appropriate, prior to being brought into Court.

Sullivan's Statement of Disputed Facts more specifically states that he "did file grievances about Wold groping his genitals." (Doc. 134 at 4.) However, he does not support this statement with any sort of evidence, such as copies of the grievance, dates of filing, a discussion of responses or lack of responses from the facility--not even a sworn affidavit. Sullivan's repeated assertions regarding other grievances, or grievances generally, persuades the Court that he has failed to grasp the relevance of this particular grievance regarding Wold. Lester's affidavit does not dispute Sullivan's grievance practice generally, just that he did not file one against Wold. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248 (1986). The Court concludes that the undisputed facts are that Sullivan did not sufficiently grieve Wold's alleged conduct, and Wold is entitled to summary judgment on the groping claim.

2. Failure to Protect

Sullivan asserts that Wold is liable for exposing him to injury by putting him in a cell with another inmate who immediately assaulted him. Failure to intervene can support a Fourteenth Amendment claim where bystanders had a realistic

opportunity to intervene but failed to do so.[1] *Lolli v. Cnty of Orange*, 351 F.3d 410, 418 (9th Cir. 2003). The elements of a pretrial detainee's Fourteenth Amendment failure-to-protect claim against an individual officer are:

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
> (2) Those conditions put the plaintiff at substantial risk of suffering serious harm;
> (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and
> (4) By not taking such measures, the defendant caused the plaintiff's injuries.

See *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016). "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[ ] on the "facts and circumstances of each particular case." ' " *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Although, in general, reasonableness determinations are for the trier of fact, in certain circumstances reasonableness may be decided as a matter of law. *McKenzie v. Lamb*, 738 F.2d 1005, 1008 (9th Cir.1984). Reasonableness becomes a question of law

---

[1] The Court notes that Wold also posits lack of administrative exhaustion as a ground for judgment on this claim as well. However, it is clear that Sullivan complained about the inmate's assault itself, and discussed it with staff. Therefore, the Court will conclude that the jail had notice of the fact of that incident, and therefore, potential claims arising from it.

appropriate for determination on motion for summary judgment "when only one conclusion about the conduct's reasonableness is possible." i.e., when no reasonable jury could find for the party opposing the motion for summary judgment. *West v. State Farm Fire & Cas. Co.,* 868 F.2d 348 (9th Cir.1989).

The parties' explanations of what occurred do not differ markedly, and both assert in their briefs that there is no genuine dispute. Sullivan points to the fact that he was handcuffed and assaulted, which is not disputed, claiming that the "failure to protect claim speaks for itself." (Doc. 120 at 2.) He also asserts that Sgt. Bailey, who investigated the issue, apologized for "wrongdoing." (Doc. 120 at 2.) Sullivan's position hinges on the fact that "Wold was warned that Sullivan would be attacked." (Doc. 139 at 1.) In Sullivan's Statement of Disputed Facts, he asserts that various actions were not in accordance with policy or procedure, without citing any procedure or clarifying why a failure to comply with policy is relevant to this analysis.

Wold's description of the assault is the same in the basic facts but elaborates the circumstances. (Doc. 124 at 6 – 7.) Wold's superior directed him to move Sullivan to the Classification Unit. (*Id.* at 5.) Wold and other officers escorted the hand-cuffed Sullivan from his original cell to the Classification Unit, where he was to be placed in a cell with another inmate. The other inmate did not know Sullivan or have any personal animosity against him, but he did not want a cellmate. (*Id.* at

10

6.) The inmate threatened to attack anyone who was put in the cell with him. This type of threat is common from inmates who do not want cellmates, but it is a discipline infraction. (*Id.* at 6 – 7.) Wold did not believe that the other inmate posed a threat to Sullivan and believed he was posturing. (Doc. 125 at 4.) Sullivan was placed in the cell and immediately punched in the face. The offending inmate was cuffed, and Sullivan was removed, thus ending the incident. *Id.*

Applying the *Castro* factors outlined above, the Court concludes that Wold did not violate Sullivan's constitutional rights by failing to protect him. Wold did make an intentional decision with respect to the conditions under which the plaintiff was confined, i.e., to place him in the cell with the other inmate. But factors two and three do not weigh in favor of finding liability. Wold did not believe that an inmate threatening to assault Sullivan was a real threat, but instead, just an expression of his displeasure at being made to have a cellmate. Generally speaking, placing an inmate into a cell with another inmate unknown to him does not reflect a "substantial risk of suffering serious harm." Sullivan does not provide any support to dispute this conclusion, including providing any reason why Wold would expect the other inmate to attack Sullivan, and not, as Wold concluded, simply threaten to do so in order to have the cell to himself. It is not feasible to require guards to change their assessments about where to place inmates if they must always accede to the threats of possible cellmates. The Court will not second

guess a guard's judgment that an inmate is making empty threats. The Court does not conclude that Wold's actions were "objectively unreasonable," nor does it conclude that any jury would find otherwise. Wold is entitled to summary judgment on this claim.

### 3. Retaliation

"A prisoner suing prison officials under section 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline." *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir.2003) (citations and internal quotations omitted). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). "Chilling" does not necessarily mean halting.

Retaliation is not established simply by showing adverse activity by a defendant after protected speech; rather, the plaintiff must show a nexus between the two. See *Huskey v. City of San Jose*, 204 F. 3d 893, 899 (9th Cir. 2000). "A plaintiff's belief that a defendant acted from an unlawful motive, without evidence

12

supporting that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive." *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001).

The factual basis of Sullivan's retaliation is not entirely clear. He asserts that he should not have been removed from his cell or handcuffed, and, in the same paragraph, he states that he was "exercising his free speech rights and was retaliated against. He never even received a hearing or write up which is against policy." (Doc. 139 at 2.) Elsewhere, he states that he was punished for claiming that he would file a lawsuit. (Doc. 120 at 2.) These assertions relate to his mistaken understanding that Wold was unauthorized to do anything about Sullivan's graffiti and indiscipline, which is incorrect. Wold had the authority to move Sullivan as needed. That was not punishment, nor retaliation; it was detention center management.

Sullivan generally alleges other forms of "retaliation and intimidation", and "unnecessary write-ups, searches and treatment," but without specifics; nothing rises to a level of a First Amendment violation. (Doc. 120 at 3.) Sullivan has sought summary judgment on this claim but has not provided any facts to support the conclusion that Wold chilled his exercise of his First Amendment rights. Wold is entitled to summary judgment.

Accordingly, the Court enters the following:

13

ORDER

1. Defendant's Motion for Summary Judgment is GRANTED. (Doc. 122.)

2. Plaintiff's Motion for Partial Summary Judgment is DENIED. (Doc. 120.)

3. All other pending motions are DENIED as moot.

4. The Clerk of Court is directed to enter judgment pursuant to Fed. R. Civ. P. 58.

5. The Clerk of Court is directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith.

DATED this 18th day of July, 2023.

Susan P. Watters
United States District Judge